IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2002 Session

## GORDON LAIN McCAMMON, ET AL. v. WILLIAM GIFFORD, SR., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 99C-2526    Walter C. Kurtz, Judge**

_____

**No. M2001-01357-COA-R3-CV - Filed April 26, 2002**

_____

This appeal involves a guest of two residents of a campground who was badly burned when a can of paint thinner ignited in his hosts' camper. The guest filed a negligence action in the Circuit Court for Davidson County against his hosts and the owner of the campground. The trial court dismissed the claims against the owner of the campground on summary judgment after concluding that the owner's duty to render aid ended once the guest's brother undertook to provide this assistance. We affirm the summary judgment because the record contains no evidence that the guest's brother was incompetent to come to his aid.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and BUDDY D. PERRY, SP. J., joined.

Bruce Balcom, Nashville, Tennessee, for the appellants, Gordon Lain McCammon, Gordon F. McCammon, and Gale L. McCammon.

Kent E. Krause and Gordon C. Aulgur, Nashville, Tennessee, for the appellee, William Gifford, Sr., d/b/a OK Campground.

**OPINION**

**I.**

On September 13, 1998, Gordon Lain McCammon ("Lain McCammon"), then seventeen years old, accompanied his brother Gordon Zachery McCammon ("Zach McCammon") on a visit with two of Zach McCammon's friends, Benjamin Bidwell and Hayden Morin. Messrs. Bidwell and Morin were living in a camper at the OK Campground while they were attending Nashville Auto Diesel College. When the McCammon brothers arrived at the campground, they joined Messrs. Bidwell and Morin in the camper's small main room.

Messrs. Bidwell and Morin were sitting in the camper cleaning paint brushes with paint thinner when the McCammon brothers arrived. Approximately ten minutes later, Mr. Morin knocked over an open can of paint thinner as he reached across the table to put his cigarette ashes in an ashtray. When the paint thinner spilled, the embers from Mr. Morin's cigarette ignited the paint thinner causing a fire on the table. Mr. Bidwell threw the flaming can of paint thinner through the door of the camper just as Lain McCammon was trying to get out of the camper to avoid the fire. The burning paint thinner struck Lain McCammon and set his clothes on fire. He quickly removed his pants and then fell to the ground and rolled in the gravel in an effort to put out the fire. When Zach McCammon escaped from the trailer, Lain McCammon begged him to "stomp . . . [the fire] out," and so Zach McCammon kicked his brother until the flames subsided. Lain McCammon, temporarily numb to the pain, made his way back into the camper with his brother's help.

Zach McCammon ran to the campground's office seeking a first aid kit. A worker told him that the campground did not keep medical supplies on hand and suggested that he go to a nearby restaurant. When the restaurant likewise did not have supplies to treat burns, Zach McCammon returned to the trailer to call his mother. Gale McCammon instructed her son to drive his brother home so she could take him to the hospital. Zach McCammon complied, and Ms. McCammon drove her son to the hospital. Lain McCammon was treated and released, and in October 1998 underwent skin graft surgery to repair the burn site on his left leg. As a result of the burn, Lain McCammon lost a substantial amount of muscle mass and the full range of motion in his left leg.

In September 1999, Lain McCammon and his parents filed suit in the Circuit Court for Davidson County against Messrs. Bidwell and Morin and William Gifford, Sr., the owner of the OK Campground. They alleged that Mr. Gifford and his employees had acted negligently by permitting campers to possess volatile material, by not requiring campers to have fire extinguishers, and by failing to summon emergency personnel immediately after learning of Lain McCammon's injuries.[1] Following discovery, Mr. Gifford filed a motion for summary judgment.[2] The trial court filed an order on May 11, 2001, granting Mr. Gifford a summary judgment after concluding that his duty to provide aid to Lain McCammon "ended when [the] plaintiff's brother was found to be caring or attempting to care for [the] plaintiff." The trial court also certified this order as final in accordance with Tenn. R. Civ. P. 54.02. Lain McCammon and his parents have perfected this appeal.

---

[1] The McCammons apparently abandoned their claims that the campground should not have permitted the campers to possess volatile materials and that the campground should have required fire extinguishers after Lain McCammon conceded in his deposition that Mr. Gifford "couldn't do nothing about the paint thinner" and "couldn't have stopped the burn." His parents, who own a trailer park, also conceded that they permit residents to use paint thinner when they are painting.

[2] Mr. Gifford's summary judgment motion does not comply with Tenn. R. Civ. P. 7.02(1) because it does not "state with particularity the grounds therefor." Instead of including the grounds for relief in his motion, Mr. Gifford apparently explained why he believed he was entitled to a judgment as a matter of law in a memorandum of law accompanying the motion. However, this memorandum, by operation of Tenn. R. App. P. 24(a), is not a part of the appellate record. We surmise from the McCammons' response to the motion that Mr. Gifford argued that his employee had no duty to seek medical treatment for Lain McCammon. Suffice it to say that articulating a defense in a memorandum accompanying a motion does not amount to compliance with Tenn. R. Civ. P. 7.02(1). *Robinson v. Clement*, 65 S.W.3d 632, 635 n.2 (Tenn. Ct. App. 2001).

## II.
## THE STANDARD OF REVIEW

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Pendleton v. Mills*, ___ S.W.3d ___, ___, 2001 WL 1089503 at *4 (Tenn. Ct. App. 2001). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n. 5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App.1998).

## III.
## THE DUTY TO RENDER AID

The outcome of this appeal hinges on the scope of the campground's duty to render aid to social guests of their campers. The McCammons assert that the campground had a duty to "seek immediate medical treatment" for Lain McCammon even though his brother had already taken charge of the situation and was providing him aid. While the precise contours of the McCammons' understanding of the campground's duty to render aid is unclear, their insistence that the

-3-

campground was obligated to second guess Zach McCammon goes far beyond the common-law duty to render aid.

## A.

Persons seeking to recover damages caused by another's negligence must prove: (1) that the defendant owed them a duty of care; (2) that the defendant breached that duty by engaging in conduct falling below the applicable standard of care; (3) that they suffered an injury or loss; (4) that the defendant's conduct was a cause in fact of their injury or loss; and (5) that the defendant's breach of duty was the proximate, or legal, cause of their injury or loss. *Staples v. CBL & Assocs. Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001). Plaintiffs who are unable to demonstrate that they will be able to establish any one of these elements at trial will not survive a summary judgment motion challenging their claim.

The McCammons' appeal implicates the first two elements of their negligence claim against Mr. Gifford – the nature and scope of Mr. Gifford's duty to Lain McCammon and Mr. Gifford's breach of that duty. These questions are ripe for disposition by summary judgment in this case for two reasons. First, the nature and extent of Mr. Gifford's duty to social guests of campers staying at his campground is a question of law to be decided by the courts. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 89; *Green v. Sacks*, 56 S.W.3d 513, 519 (Tenn. Ct. App. 2001). Second, there are no material factual disputes regarding Zach McCammon's ability to come to his brother's assistance. If not already evident, the pivotal importance of Zach McCammon's competence will shortly become clear.

The existence of a duty owed by the defendant to the plaintiff is a necessary ingredient of every negligence case. *Church v. Perales*, 39 S.W.3d at 163. Determining whether a duty exists in the circumstances of a particular case requires the court to decide whether the plaintiff has a legal interest which is entitled to protection at the hands of the defendant. *Bradshaw v. Daniel*, 854 S.W.2d at 869-70. In this context, duty connotes the obligation to act reasonably to protect another from an unreasonable risk of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 915 n.2 (Tenn. Ct. App. 2000).

The courts will decline to impose a duty to protect against conditions from which no unreasonable risk of harm can be anticipated. *Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998); *Psillas v. Home Depot, USA, Inc.*, 66 S.W.3d 860, 865 (Tenn. Ct. App. 2001). A risk of harm is unreasonable if the foreseeable probability and gravity of the harm outweigh the burden imposed on the defendant to correct the harm. *McCall v. Wilder*, 913 S.W.3d at 153; *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000). When deciding whether a particular risk of harm is unreasonable, the courts consider (1) the foreseeable probability of the harm occurring, (2) the potential magnitude of the harm, (3) the importance, social value, and usefulness of the defendant's activities, (4) the feasibility and the relative costs and burdens of alternative, safer conduct, and (5) the usefulness and relative safety of the alternative, safer conduct. *Coln v. City of Savannah*, 966

S.W.2d 34, 39 (Tenn. 1998), *clarified in Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *McCall v. Wilder*, 913 S.W.2d at 153.

## B.

Most American courts, being reluctant to base fault on "nonfeasance",[3] have traditionally held that an innocent bystander has no duty to provide affirmative aid to an injured person, even when the bystander has the ability to help. W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 56, at 375 (5th Ed. 1984); Restatement (Second) of Torts § 314 (1965). This no-duty-to-render-aid rule has been under withering academic attack for decades. *See, e.g.*, Peter F. Lake, *Bad Boys, Bad Men, and Bad Case Law: Re-examining the Historical Foundation of No-Duty-to-Rescue Rules*, 43 N.Y.L. Sch. L. Rev. 385, 385-86 (1999). Instead of abandoning the rule outright in favor of some rule of universal application, the courts have circumvented the rule by carving out exceptions in cases where some "special relation" between the parties provides a justification for imposing a duty to render aid. *See Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978).

When courts find that a "special relation" exists, they will recognize a duty to aid and protect that includes (1) the duty to protect against unreasonable risks of physical harm[4] and (2) the duty to give first aid to ill or injured persons until they can be cared for by others. Restatement (Second) of Torts § 314A(1)(a) & (b). The Restatement's duty to render aid is a "milder" duty requiring persons to exercise reasonable care under the circumstances. 3 Fowler V. Harper et. al., *The Law of Torts* § 18.6, at 720 (2d ed. 1986). Thus, the Restatement recognizes that persons are not required to give aid to persons whom they have no reason to know to be ill or injured or whose illness or injury does not appear to be serious or life-threatening. Restatement (Second) of Torts § 314A cmt. e. The Restatement also recognizes:

> The defendant is not required to take any action until he [or she] knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick . . . [person] over to a physician, or to those who will look after him and see that medical assistance is obtained. He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and are apparently in a position to give him all necessary assistance.

---

[3] A failure to act can impose no liability in the absence of an existing duty to act. *Dabbs v. Tennessee Valley Auth.*, 194 Tenn. 185, 190, 250 S.W.2d 67, 69 (1952); *see also Bradshaw v. Daniel*, 854 S.W.2d at 870.

[4] *Rice v. Sabir*, 979 S.W.2d at 308; *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d at 864.

Restatement (Second) of Torts § 314A cmt. f. Accordingly, the duty to render aid does not extend to providing all medical care that a business could reasonably foresee might be needed by its patrons, *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1179 (3d Cir. 1994), or to provide the sort of aid that requires special training to administer. *Applebaum v. Nemon*, 678 S.W.2d 533, 537 (Tex. App. 1984).

Restatement (Second) of Torts § 314A contains a non-exclusive list[5] of four special relations from which the duty to render aid will arise. One of these is the relation between a "possessor of land who holds it open to the public . . . [and] members of the public who enter in response to his invitation." Restatement (Second) of Torts § 314A(3). Accordingly, Tennessee's courts have imposed the duty to render aid on hosts with regard to their social guests, *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 860 (Tenn. 1985), and on businesses with regard to customers on their premises. *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 78 (Tenn. Ct. App. 1990). They have also adopted the limitation on this duty in Restatement (Second) of Torts § 314A cmt. f by holding that a person "is not required to render any aid to one who is in the hands of apparently competent persons who have taken charge of him or whose friends are present and apparently in a position to give him the necessary assistance." *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d at 78.

None of our duty-to-provide-aid cases have addressed whether property owners who lease or otherwise rent their property to others owe a duty to provide aid to the social invitees of their guests, tenants, or customers.[6] As a general matter, property owners do not have a duty to render aid with regard to injuries or illness occurring on the portion of the property occupied, possessed, and under the control of the tenant. *See Samson v. Saginaw Prof'l Bldg., Inc.*, 224 N.W.2d 843, 849 (Mich. 1975); *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000) (holding that a landlord is generally not liable for a dangerous condition on leased premises). However, a duty to render aid will arise when the ill or injured person is in a common area or another area not possessed by a tenant, guest, or customer. *Shackett v. Schwartz*, 258 N.W.2d 543, 547 (Mich. Ct. App. 1977); *Tedder v. Raskin*, 728 S.W.2d 343, 347-48 (Tenn. Ct. App. 1987).

## C.

Lain McCammon, as a social guest of Messrs. Bidwell and Morin, was an invitee of the OK Campground.[7] Accordingly, a "special relation" existed between him and the campground that was sufficient to impose a duty on Mr. Gifford and his employees to render when they learned that Lain

---

[5]Restatement (Second) of Torts § 314A cmt. b (stating that the relations listed are not intended to be exclusive); *Newton v. Tinsley*, 970 S.W.2d 490, 493 (Tenn. Ct. App. 1997) (noting that the special relations mentioned in the Restatement are not exclusive).

[6]The injuries in *Lindsey v. Miami Dev. Corp.* occurred on leased property. While the Tennessee Supreme Court held that the host/tenant owed a duty to render reasonable aid to his intoxicated social guest after she fell from a balcony, it did not address the duty of the owner of the premises.

[7]*Emerine v. Scaglione*, 751 So. 2d 73, 74 (Fla. Dist. Ct. App. 1999) (holding that a social guest of a tenant of a campground was an invitee of the campground).

McCammon was lying injured in a common area of the campground. However, this duty to render aid did not require Mr. Gifford or his employees to "seek immediate medical treatment" for Lain McCammon if, when they learned of his injury, they also learned that he was in the hands of persons who were apparently competent to give him appropriate assistance.

While the McCammons characterize Zach McCammon as "distrought" over his brother's injury, they have never asserted that he was incompetent or incapable of aiding his brother or that his actions were somehow obviously inappropriate. The undisputed facts demonstrate that Zach McCammon was cool-headed enough to seek a first aid kit and to telephone his mother for assistance. It was Ms. McCammon and Zach McCammon who decided to drive Lain McCammon to the hospital rather than directing Zach McCammon to call an ambulance to the scene. Thus, in light of the undisputed facts, the campground had no duty to seek immediate medical treatment for Lain McCammon because his brother was acting competently to render him the aid he needed. The campground was certainly not required to second guess Ms. McCammon's decision to drive the boy to the hospital instead of calling an ambulance.

## IV.

We affirm the summary judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal, jointly and severally, to Gordon Lain McCammon, Gordon F. McCammon, and Gale L. McCammon and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE