ROTHENBERG, J.
 

 Marvin Glenn Clark (“Clark”) appeals the trial court’s order, following a bench trial, declaring him a sexually violent predator and civilly committing him for treatment pursuant to sections 394.910-982, Florida Statutes (2008) (“the Jimmy Ryce Act”). Because we find no abuse of discretion as to the objected-to evidence introduced at trial and there is more than ample evidence to support the trial court’s finding, we affirm.
 

 In 1993, Clark committed numerous lewd assaults or acts and other offenses against young boys, generally twelve to thirteen years of age. Although some of the victims were older, all were minors. Although Clark pled guilty in 1994 to ten counts of lewd assault and one .count of kidnapping, charged in four separate cases, he admitted to committing many more lewd assaults or acts against minor boys during the same time frame. Clark admitted that he used his position as a volunteer basketball coach at a Jewish community center to lure the victims to various locations where he would expose himself and masturbate in their presence, sometimes while watching pornographic movies or viewing pornographic magazines, encouraging his victims to masturbate with him. Moreover, on at least one occasion, Clark fondled the penis of a thirteen-year-old boy, masturbated him, and then forcibly tackled the boy onto the floor, pinning him down and then rubbing himself up against the victim.
 

 Inexplicably, despite Clark’s admission to these offenses, he was sentenced to only 364 days in jail followed by fifteen years of probation. In January of 1995, after Clark was released from jail, his probation was transferred, at his request, to Texas,
 
 *1054
 
 where he soon re-offended. Based on Clark’s version of the incident which resulted in his violation, he picked up a fifteen-year-old boy after “meeting him” in an internet chat room for fifteen-to-eighteen-year-olds, by misrepresenting his own age as seventeen
 
 [1]
 
 and offering to let the victim drive his new Corvette. He drove the victim to a school parking lot, asked the victim if he wanted to masturbate with him and was unzipping his own pants to masturbate when the police arrived and he was arrested. The victim’s account differs from Clark’s in that the victim claimed that Clark asked the victim if he wanted to masturbate, and when the victim declined, Clark reached for the victim’s penis, the victim pushed Clark away, and as Clark was about to try again, the police arrived.
 

 While the charges in Texas were still pending, the Florida Department of Corrections filed an affidavit charging Clark with violating his probation based on his 1995 arrest in Texas for the incident just described, which was charged as an attempted indecency with a child. Thereafter, Clark was transported to Florida to face the probation violation. Clark ultimately admitted to the allegations in the affidavit, pled guilty to violating his probation in Florida, was adjudicated guilty, and sentenced to fifteen years in prison.
 

 In February of 2002, while Clark was still incarcerated in Florida, the State filed a petition seeking Clark’s commitment as a sexually violent predator under the Jimmy Ryce Act. The trial court entered an order finding probable cause to believe Clark was a sexually violent predator and eligible for civil commitment under the Jimmy Ryce Act. However, before Clark could be tried, he completed his Florida sentence, and due to the interstate criminal hold filed by Texas, Clark was transported to Texas to face the still-pending charges in Texas. Clark pled guilty in Texas to the 1995 attempted indecency with a child charge, was adjudicated, given credit for time served, and was released.
 

 Florida continued to pursue its civil commitment petition, but because Clark had already completed his Florida sentence, and commitment proceedings are civil in nature, Clark’s appearance in Florida could not be compelled. Thus, although Clark was represented by counsel, Clark did not personally appear for trial in Florida and he was tried in absentia. At the conclusion of the trial, the trial court entered a final judgment finding Clark to be a sexually violent predator and committing him indefinitely for treatment. However, because Clark’s commitment is a civil commitment, his presence in Florida cannot be compelled, and he continues to reside in Texas.
 

 THE TRIAL
 

 Dr. Eric Imhof, a psychologist and a member of the multidisciplinary team that evaluated Clark prior to his release from his Florida incarceration in 2002, recommended that Clark be involuntarily civilly committed. Dr. Imhof, who testified on behalf of the State, diagnosed Clark as having a mental disorder (paraphilia) and a personality disorder; found that Clark demonstrated features of pedophilia based on his predilection for younger males; opined that Clark was likely to engage in acts of sexual violence if not confined; and placed Clark in the high-risk of reoffend-ing category. Dr. Imhofs diagnosis and expert opinions were based on his review of Clark’s prior offenses, his interview of Clark in 2001, the incident that occurred in Texas which resulted in the violation of Clark’s Florida probation, Clark’s poor judgment in his continued association with
 
 *1055
 
 minors by repeatedly putting himself in high-risk situations, and the results of three actuarial tests he performed on Clark.
 

 Among the prior offenses Dr. Imhof relied on are the offenses to which Clark pled guilty (ten counts of lewd assault or acts against young boys and one count of kidnapping), and his admissions to many additional offenses. Clark told Dr. Imhof that on approximately fifteen occasions, he provided pornography to the boys on his basketball team, ages twelve to seventeen, and masturbated in front of them. On seven or eight occasions, he was able to convince his victims to masturbate with him. Clark told Dr. Imhof that he was addicted to pornography. Dr. Imhof also considered Clark’s statement to the police in which he admitted to “countless occasions involving sexual activity in the presence of juveniles” and to numerous acts in addition to the acts prosecuted.
 

 Dr. Imhof found that Clark demonstrated a pattern of grooming young males with cars and money and then engaging them in sexual activity. Dr. Imhof considered it significant that while Clark was on probation in Florida and under close scrutiny, he committed the attempted indecency with a child in Texas and continued to place himself in high-risk situations by associating with minor boys. Dr. Imhof testified that Clark suffers from paraphilia, a lifelong chronic disorder; scored in the high-risk category in the three actuarial tests he performed; refused treatment when he was incarcerated in Florida; and was likely to commit sexually violent acts if not confined.
 

 Dr. Amy Phenix, who testified for the defense, considered the same historical information considered by Dr. Imhof and her interview and testing of Clark. She agreed with Dr. Imhof that Clark suffers from paraphilia, a chronic condition that is not outgrown, but opined that, because Clark did not re-offend from 2002 to 2008 (the time of trial), he likely possessed adequate volitional controls. Dr. Phenix, however, expressed her concern that Clark continued to place himself in high-risk situations, and noted that Clark’s statements to the various doctors were inconsistent.
 

 ISSUES ON APPEAL
 

 Clark has raised two grounds for reversal on appeal: (1) the introduction of four police reports generated in Texas where Clark was not arrested or charged for the conduct alleged; and (2) the introduction of a written report generated in 2001 by Dr. Peter Bursten, a psychologist, who was a member of the multidisciplinary team that evaluated Clark in 2001 and recommended his commitment. The State based its petition seeking civil commitment under the Jimmy Ryce Act on this evaluation.
 

 A. The Police Reports
 

 The trial court, over Clark’s objection, admitted the contents of four police reports generated in Texas. It is undisputed that none of the incidents described in these reports, which allegedly occurred after Clark returned to Texas after his release from a Florida prison in 2002, led to an arrest, plea, or conviction.
 

 The first report was made in September of 2003, after Clark, who was a registered sex offender and thirty-six years of age, asked a neighbor if he could take her fourteen-year-old son with him to the park to play basketball. The second report was made in June of 2004, by another neighbor. This neighbor reported that she had observed Clark with young (thirteen-to-fourteen-year-old) boys in his apartment and that some of these boys stayed overnight in Clark’s apartment. She reported her observations after learning that Clark was a registered sex offender. Several
 
 *1056
 
 neighbors who were subsequently interviewed by the police stated that they had made similar observations. The third complaint was filed in July of 2005 by an eighteen-year-old boy who initially claimed that after Clark allowed him to stay in his apartment for a couple of days, Clark fondled his penis and then anally raped him. The boy later recanted and admitted that the sex was consensual, stating that he had fabricated his claim that the sexual encounter was nonconsensual to avoid getting into trouble with his family. The final report was filed by a police officer in September of 2006, after he found Clark, who was then forty years old, in a parked vehicle just before midnight, accompanied by a fifteen-year-old boy and a seventeen-year-old boy, with a pornographic DVD sitting on top of the car’s console.
 

 Clark contends that the admission of this hearsay evidence was error requiring a new trial because the uncharged bad acts lacked the requisite indicia of reliability and violated his right to due process by denying him the ability to confront his accusers. We disagree that the admission of these reports requires a new trial based on our standard of review; section 394.9155(5), Florida Statutes (2008), which permits the introduction of hearsay evidence during involuntary civil commitment Jimmy Ryce Act proceedings; Clark’s admission to the accuracy of most of the hearsay evidence; the psychologists’ reliance on the portions of these reports Clark admitted to; and the fact that Clark’s commitment order was not based exclusively on this hearsay evidence. We also note that Clark was represented by counsel during these proceedings and he did not attempt to call any of the witnesses in the reports during his trial.
 

 A trial court’s ruling on the admissibility of evidence will not be disturbed absent a finding that the trial court abused its discretion.
 
 Franklin v. State,
 
 965 So.2d 79, 94 (Fla.2007). Section 394.9155 allows the introduction of hearsay evidence under the Jimmy Ryce Act, providing the evidence is relevant and the trial court does not find that the evidence is unreliable. Section 394.9155 provides, in relevant part:
 

 (4) The court may consider evidence of prior behavior by a person who is subject to proceedings under this part if such evidence is relevant to proving that the person is a sexually violent predator.
 

 (5) Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.
 

 (emphasis added).
 

 The police reports were clearly relevant. The experts considered the evidence contained in these reports in rendering their opinions regarding the risk of Clark re-offending. Dr. Imhof testified that the reports demonstrated that Clark continued to exercise poor judgment by placing himself in high-risk situations, noting the significant age differential (a forty-year-old man associating with teenage boys), and his continued interest in pornography, despite his denials to the contrary. Dr. Phenix, Clark’s expert witness, also expressed her concern regarding Clark’s continued association with teenage boys. She testified that, in her opinion, Clark liked to be around teenage boys because he is aroused by them and she did not believe that Clark asked to play basketball with the fourteen-year-old boy simply because he wanted to play basketball. Dr. Phenix also considered it to be a prob
 
 *1057
 
 lem and a high-risk situation for Clark, as the employer of a seventeen-year-old, and as an authority figure, to invite the boy to his home, especially in view of his history of befriending young boys and “grooming” them to commit lewd acts with or upon them. Thus, these hearsay reports were clearly relevant.
 

 The second question we must answer is whether the hearsay evidence had sufficient indicia of reliability to permit its admission. Section 394.9155(5) specifies that hearsay evidence is admissible unless the trial court finds it is not reliable. Although a plea of guilt or a conviction may establish the reliability of hearsay statements contained in police reports,
 
 see Jenkins v. State,
 
 803 So.2d 783, 785 (Fla. 5th DCA 2001), a conviction is not required where the defendant admits to the allegations contained in these reports and the hearsay evidence is not the sole basis for the defendant’s commitment.
 
 See Pesci v. State,
 
 963 So.2d 780, 785 (Fla. 3d DCA 2007) (finding no abuse of discretion in the introduction of police reports wherein the defendant admitted to the psychologists the accuracy of most of the hearsay evidence that was presented and this hearsay evidence was not the sole basis for the defendant’s commitment);
 
 Sloss v. State,
 
 925 So.2d 419, 423 (Fla. 5th DCA 2006);
 
 Lee v. State,
 
 854 So.2d 709, 713 (Fla. 2d DCA 2003)
 
 receded from on other grounds by In re Commitment of DeBolt,
 
 19 So.3d 335, 338 (Fla. 2d DCA 2009) (en banc).
 

 The record reflects that Clark admitted to the psychologists the accuracy of most of the allegations contained in the police reports and Clark’s admissions to this hearsay evidence was considered by the experts in determining whether Clark was likely to re-offend.
 
 [2]
 
 Additionally, this hearsay evidence was not the sole basis for Clark’s commitment. In addition to the hearsay evidence, the experts considered, and the trial court had before it, Clark’s prior offenses, the violation of his probation soon after his release from his initial Florida incarceration, his scores on the various risk-assessment examinations, and his refusal to receive treatment during his second, and more lengthy, incarceration. Because the objected-to hearsay was relevant, reliable, relied on by both of the testifying experts in forming their opinions, and not the sole basis for Clark’s commitment, we find no abuse in discretion in its admission.
 

 B. Dr. Peter Bursten’s Report
 

 Clark contends that the admission of Dr. Bursten’s report violated the trial court’s pretrial ruling limiting the number of experts to one per side.
 
 [3]
 
 The State, however, argues that because Dr. Bursten did not testify, his report was relied on by both the State’s and Clark’s experts at trial, and Dr. Bursten was a member of
 
 *1058
 
 the multidisciplinary team retained by the Department of Children and Families to evaluate Clark and make a recommendation regarding civil commitment, not a witness retained by either the State of the defense, his report was properly admitted. We agree with the State.
 

 Section 394.9155(5) provides that reports prepared by a member of the multidisciplinary team or on behalf of the multidisciplinary team, are admissible unless they are unreliable. Clark does not dispute that Dr. Bursten’s report is reliable and that it was considered by his own expert, Dr. Phenix, in performing her evaluation of Clark and was referred to by Dr. Phe-nix during her testimony at trial. It is also undisputed that Dr. Bursten was not retained by the State Attorney’s Office to evaluate Clark or to testify as a witness at trial. Dr. Bursten evaluated Clark in 2001 and his report was provided to the State and Clark. We therefore find that the trial court did not violate its pretrial ruling or abuse its discretion in admitting Dr. Bursten’s report.
 

 CONCLUSION
 

 Because we find that the trial court did not abuse its discretion or violate its pretrial ruling regarding the admissibility of the objected-to evidence, and we conclude that the record evidence supports the trial court’s finding declaring Clark a sexually violent predator and civilly committing him for treatment under the Jimmy Ryce Act, we affirm.
 

 Affirmed.
 

 [1]
 

 . Clark was actually twenty-eight years old at the lime.
 

 [2]
 

 .
 
 Clark admitted to all of the allegations in the first report — that he took a fourteen-year-old to the park to play basketball after obtaining permission from the boy's mother. He admitted that he invited minor boys to his home, as alleged in the second report, but claimed that they were his employees, they were accompanied by an adult, and they never spent the night. Regarding the third report, Clark denied engaging in sexual activity with the teenager who he admitted did stay with him in his apartment, but because the teenager was eighteen and the teenager admitted that no force was used, the evidence relevant to this report does not constitute a “bad act.” As to the final report, Clark admitted to all of the allegations except he claimed that the pornographic DVD was in the console, not on the console.
 

 [3]
 

 . Prior to trial, the State moved in limine to limit each side to one expert per side. The trial court granted the State's motion and Clark does not contest this ruling.